IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MCKENNA ADVISORS LLC,<br><br>                Petitioner,<br><br>v.<br><br>PGA TOUR, INC.,<br><br>                Respondent, | CASE NO. 1:23-mc-8-RDA-WEF |

**LIV GOLF'S RESPONSE TO PGA TOUR'S MOTION TO SEAL PGA TOUR'S OPPOSITION TO MCKENNA ADVISORS LLC'S MOTION TO QUASH THIRD PARTY SUBPOENA AND EXHIBITS 12-31 IN SUPPORT THEREOF**

Pursuant to Local Civil Rule 5, LIV Golf, Inc. ("LIV") provides the following statement of the applicable legal standard and reasons for keeping under seal information, which has been designated as confidential by LIV, and filed under seal in connection with Respondent PGA Tour, Inc.'s Opposition to McKenna Advisors LLC's Motion to Quash Third Party Subpoena (the "Opposition"). *See* ECF 15.

Although "the common law and the First Amendment presume a public right of access to court documents," *Malon v. Franklin Financial Corp.*, 2014 WL 12768782, at *2 (E.D. Va. Dec. 4, 2014) (*citing Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)), "the Fourth Circuit has nonetheless stated that a district court 'may, in its discretion, seal documents if the public's right of access is outweighed by competing interests,'" *id.* (*quoting In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)). In determining whether to grant a motion to seal, the district court must engage with three requirements articulated by the Fourth Circuit in *Ashcraft v. Conoco, Inc.*: "[I]t must (1) provide public notice of the request to seal and allow

interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." 218 F.3d 288, 302 (4th Cir. 2000).

LIV's request to seal the unredacted Opposition and Exhibits 12-31 satisfy all three *Ashcraft* factors. Regarding the first factor, the public will have adequate notice of Respondent's request to seal, through the motion and notice of motion to seal as required by Local Civil Rule 5 filed by Respondent on April 26, 2023. *See Malon*, 2014 WL 12768782, at *2 (finding that docketing a motion to seal and notice of a motion to seal on a public, court docket is sufficient to satisfy notice requirement); *see also East West, LLC v. Rahman*, 2012 WL 3841401, at *3 (E.D. Va. Sept. 4, 2012) (same).

As to the second and third *Ashcraft* factors, sealing is appropriate, and no less drastic alternatives to sealing exist. As explained in the accompanying Declaration of Greg Norman, the sealed material is not publicly available and contains confidential or highly confidential information as described in further detail below. *See* Norman Decl. ¶¶ 2-12. Such material is routinely found appropriate for sealing by courts in the Fourth Circuit. *See Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 2021 WL 8444700, at *1 (E.D. Va. Dec. 14, 2021) (granting motion to seal "confidential communications and information that are not generally known" where "[p]ublic disclosure of that confidential information would cause competitive harm and place [plaintiff] at a competitive disadvantage"); *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation,* 2019 WL 8108115, at *4 (E.D. Va. Aug. 15, 2019) (finding that contracts, amendments, profit allocations, allocations of confidential responsibilities, and

strategies for creating, commercializing and selling a product is "sensitive commercial information that is usually sealed"); *see also Malon*, 2014 WL 12768782, at *3.

Exhibits 12[1] and 13: These are a highly confidential services summary and the underlying engagement agreement, which are described on pages 2-4, 17, and 19 of the Opposition. The documents describe plans and strategy for LIV's formation and development, capital expended on developing LIV, and contain information about terms of indemnification, the disclosure of which would cause competitive harm. Disclosure also would constrain LIV's negotiating power in seeking to retain other advisors in the future, because future consultants and advisors could structure their negotiations and demands around the terms in this agreement. Disclosure of past payments to advisors and consultants would similarly distort future negotiations over financial terms. Finally, disclosure would affect the course of litigation with respect to third-party advisors and consultants retained by LIV in the future by exposing and creating divisions based on the indemnification limitations and procedures in place. Norman Decl. ¶ 2.

Exhibit 14: This is a highly confidential document regarding LIV's future business strategy on format, innovation, structure, and potential media and broadcasting partners, and is described on page 16 of the Opposition. The disclosure of such information would cause competitive harm. LIV's financial information and business strategy are not publicly known. Disclosure would allow LIV's competitors (including the Tour) to counter the stated business strategy. The information in this document would become a source of competitive advantage for LIV's rivals (including the Tour) and further cause anticompetitive harm. Norman Decl. ¶ 3.

---

[1] Please note that Exhibit 12 is a privileged document that was produced inadvertently. LIV has clawed back this document and has notified the PGA Tour of its obligations pursuant to Federal Rules of Civil Procedure 26(b)(5)(B). Any references to or quotes from Exhibit 12, and privileged portions of Exhibit 12 itself, should remain under seal.

3

Exhibits 15 and 20: These are highly confidential documents regarding LIV's business strategy with respect to league functions and tournament structure, including how LIV's advisors assist with business strategy, as described on pages 5, 13, and 16 of the Opposition. This information is highly confidential, and disclosure would cause competitive harm. LIV's business strategy is not publicly known. Disclosure would provide LIV's competitors (including the Tour) with an unfair advantage with respect to that otherwise confidential business strategy. Disclosure would affect LIV's ability to fairly compete in the marketplace because the information in this document would become a source of competitive advantage for LIV's rivals (including the Tour) and further cause anticompetitive harm. Norman Decl. ¶ 4.

Exhibit 16: This is a highly confidential document about LIV's advisors, investors, and business strategy. The disclosure of such information would cause competitive harm. Disclosure also would affect future negotiations by exposing LIV's access to capital and ability to pay. The information in this document would become a source of competitive advantage for LIV's rivals (including the Tour) and further cause anticompetitive harm. Norman Decl. ¶ 5.

Exhibit 17: These are highly confidential board meeting minutes which contain information about internal decision-making regarding strategy, business plans, and corporate structure. This information is highly confidential, and disclosure would cause competitive harm. LIV's financial information and business strategy are not publicly known. Disclosure would alter future negotiations by exposing LIV's strategy with respect to the future of the league. The information in this document would become a source of competitive advantage for LIV's rivals (including the Tour) and further cause anticompetitive harm. Norman Decl. ¶ 6.

Exhibits 18 and 19: These are highly confidential business strategy documents about media rights and sponsors, which are described on pages 6 and 13 of the Opposition. This information

is highly confidential, and disclosure would cause competitive harm. LIV's business strategy and future plan with respect to media rights and sponsors are not publicly known, and disclosure would change the dynamic of future negotiations with media companies and sponsors by exposing LIV's confidential strategy. The information in this document would become a source of competitive advantage for LIV's rivals (including the Tour) and further cause anticompetitive harm. Norman Decl. ¶ 7.

Exhibit 21: This is a highly confidential business strategy document with McKenna Advisors, which is described on page 7 of the Opposition. This information is highly confidential, and disclosure would cause competitive harm. LIV's business strategy is not publicly known. The information in this document would become a source of competitive advantage for LIV's rivals (including the Tour) and further cause anticompetitive harm. Norman Decl. ¶ 8.

Exhibit 22: This is a highly confidential document regarding player agreements, terms of agreements, and LIV's recruitment strategy. Disclosure of this information would affect future negotiations with players, who would demand the otherwise confidential terms afforded to others. This could hamper LIV's ability to negotiate different terms with different players, as well as expose its recruitment strategy which could drive up costs and change the scope of business opportunities. Norman Decl. ¶ 9.

Exhibits 23, 26, 27, 28, 30, 31: These are confidential documents regarding LIV's litigation, media, communications, and public relations strategies, which are described on pages 5-7 and 13 of the Opposition. Disclosure of these strategies would cause competitive harm as LIV's media, communications, and public relations strategy is not publicly known. These documents also contain internal decision-making and strategy regarding various facets of the league, including player contract terms and negotiations, league and tournament structure,

5

employees, investors, and potential partnerships. The information in this document would become a source of competitive advantage for LIV's rivals (including the Tour) and further cause anticompetitive harm. The information could also affect LIV's ability to negotiate with employees, investors, and potential partners. Norman Decl. ¶ 10.

Exhibits 24 and 25: These are confidential documents regarding LIV's negotiations with tournament vendors and arrangements, which are described on pages 5, 6, and 13 of the Opposition. This information is not publicly known. This information is confidential, and disclosure of such would cause competitive harm and affect LIV's ability to negotiate with tournament vendors and other personnel in the future. The information in this document would become a source of competitive advantage for LIV's rivals (including the Tour) and further cause anticompetitive harm. Norman Decl. ¶ 11.

Exhibit 29: This is a highly confidential document describing information regarding LIV's investors and the investor's portfolio. LIV's financial information and business strategy are not publicly known. Disclosure of this information would cause competitive harm to LIV by allowing competitors (such as the Tour) to exploit the information to counter LIV. Norman Decl. ¶ 12.

Additionally, this material has been designated as "Confidential" and "Confidential – Attorneys' Eyes Only" under the operative Protective Order in *Jones, et al. v. PGA Tour, Inc.*, No. 5:22-cv-04486-BLF, Dkt. 111 (N.D. Cal. Oct. 4, 2022). Documents designated as confidential pursuant to a protective order are routinely sealed by courts. *See Mars, Inc. v. J.M. Smucker Co.*, 2017 WL 11499735 (E.D. Va. Aug. 9, 2017) (granting motion to seal where "the information sought to be filed under seal may contain data and information that [were] designated as 'Confidential,' . . . under the Amended Protective Order governing th[e] case"); *Malon*, 2014 WL 12768782, at *3 (granting motion to seal where documents were marked

"confidential" pursuant to a protective order ). Note that the PGA Tour designated similar material as confidential under the operative Protective Order in *Jones, et al. v. PGA Tour, Inc.* *See* Case No. 5:22-cv-04486-BLF, Dkt. 251 (N.D. Cal. Feb. 3, 2023) (seeking to seal information regarding "commercially sensitive correspondence internal to the TOUR and between TOUR executives and commercial partners"); *id.* at Dkt. 268 (Feb. 10, 2023) (seeking to seal information regarding "corporate decision-making process" and "internal decision-making process, including relationships with players, sponsors, and other golf tours, as well as media strategy").

Finally, for business documents containing "proprietary and generally sensitive" information, "there exists no less drastic alterative to retention of the Confidential Materials under seal." *Malon*, 2014 WL 12768782, at *3. And the redactions proposed by Respondent in the Memorandum have been tailored to narrowly target the references, discussions, or identifications of the exhibits. *See Adams v. Object Innovation, Inc.*, No. 3:11-cv-272-REP-DWD, 2011 WL 7042224, at *4 (E.D. Va. Dec. 5, 2011) ("[The] proposal to redact only the proprietary and confidential information, rather than seal the entirety of [the document], constitutes the least drastic method of shielding the information at issue."), *report and recommendation adopted*, 2012 WL 135428 (E.D. Va. Jan. 17, 2012). This selective protection of information constitutes the least drastic measure of sealing confidential material.

Accordingly, pursuant to Local Civil Rule 5(C) and the Protective Order in *Jones, et al. v. PGA Tour, Inc.*, LIV respectfully requests that the Court seal the unredacted versions of PGA Tour's Opposition and Exhibits 12-31.

DATED: May 3, 2023                                             Respectfully submitted,

                                                                      */s/ Michael R. Dziuban*

Michael R. Dziuban (VSB # 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mdziuban@gibsondunn.com

RACHEL S. BRASS, (Cal. # 219301),
  *pro hac vice forthcoming*
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306
rbrass@gibsondunn.com

*Counsel for Non-Party LIV Golf, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 3, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify the following parties of this filing:

| | |
|---|---|
| Eric K. Phung | Cailyn Reilly Knapp |
| Keker, Van Nest & Peters LLP | BAKER BOTTS L.L.P. |
| 633 Battery Street | 700 K Street N.W. |
| San Francisco, CA 94111-1809 | Washington, D.C. 20001 |
| Tel: (415) 676-2270 | Telephone: 202.639.7753 |
| Fax (415) 397-7188 | Facsimile: 202.585.4070 |
| Email: ephung@keker.com | cailyn.reilly.knapp@bakerbotts.co |

      */s/ Michael R. Dziuban*
      Michael R. Dziuban
      GIBSON, DUNN & CRUTCHER LLP
      1050 Connecticut Avenue, N.W.
      Washington, D.C. 20036-5306
      Telephone: (202) 955-8500
      Facsimile: (202) 467-0539
      mdziuban@gibsondunn.com

      *Counsel for Non-Party LIV Golf, Inc.*